JAMES B. MURRIN, Respondent, v. ARCHBALD CONSOLIDATED
COAL COMPANY and Others, Appellants.

First Department, April 8, 1921.

**Corporations — transfer of assets to new corporation with provision
for exchange of stock and privilege of buying preferred stock —
rights of non-consenting stockholder in old corporation — rights
of pledgee of majority of stock in old corporation — validity of
consent of pledgor to organization of new corporation.**

The plaintiff held in pledge a majority of the issued stock of the defendant
corporation to secure the payment of a note, which he intended to sell and
thereby gain title to the majority of the stock.   The underwriters of the
bonds of the defendant corporation in order to protect themselves formed
a new corporation under the laws of the State of Delaware, with the con-
sent of the pledgor of the stock held by the plaintiff, and it was provided
that the holders of the common stock in the old corporation might exchange
it at par value for common stock in the new, with the privilege of buying
a certain percentage of the preferred stock.   The effect of this arrange-
ment was to make the plaintiff, who thereafter became absolute owner
of the pledged stock, a minority stockholder in the new corporation.
In an action to compel the new corporation to reconvey to the defendant
corporation all of the assets of said corporation,

*Held*, that the sale of the assets to the new corporation in consideration
of the exchange of stock in the new corporation for stock in the old, was
not authorized since the rights of the non-consenting stockholder in the
new corporation differ from his rights in the old corporation in respect
to his interest therein; by means of the organization of the new corporation
the plaintiff would become a minority stockholder in the new corporation
instead of a majority stockholder.

Where the rights of the non-consenting stockholders are not protected,
the right of sale given upon the consent of a percentage of the owners
of the stock means the right of sale for cash and at a fair valuation,
which would leave to the non-consenting stockholder who did not care to
join the new corporation the right to his *aliquot* part in the assets of the
old corporation.

The sale in this case was not a sale for cash, and as the plaintiff did not
consent to the organization of the new corporation and to the exchange of
stock, he is not bound thereby, and the sale as to him was an illegal
sale, and he can ask the court to revoke the same and restore to the old
company its assets, at least, unless the new company pays to him a fair
value for his stock in the old corporation.

Having title to the stock as pledgee thereof, no act of the pledgor could
divest the plaintiff of his rights obtained thereby, and, with his rights

as pledgee therein, he alone could consent to the transfer of that stock for the stock of the new corporation.

The pledgor not having the right to turn in the pledged stock in exchange for stock in the new corporation, his right to vote that stock was a limited right, limited to the right to vote for the sale of the stock for cash at a fair valuation.

APPEAL by the defendants, Archbald Consolidated Coal Company and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of January, 1921, granting plaintiff's motion for a temporary injunction pending the determination of the action.

*George L. Ingraham* of counsel [*Ernest G. Fifield* and *Howard C. Reid* with him on the brief; *White & Case*, attorneys], for the appellants.

*Harold W. Bissell* of counsel [*William C. Cannon* with him on the brief; *Stetson, Jennings & Russell*, attorneys], for the respondent.

SMITH, J.:

In October, 1919, the plaintiff was the lessee of a tract of coal land in the county of Lackawanna, comprising about 2,300 acres of land more or less. One Newton had organized the Archbald Coal Company, which was the operating company which had conducted the operations under this lease which was transferred in October, 1909, to the said company. The Archbald Consolidated Coal Company was organized by the said Newton as a holding company, owning all the stock of the Archbald Coal Company. The plaintiff transferred this lease to the Archbald Coal Company for the purchase price of $100,000. He was paid thereupon the sum of $25,000 and the remaining $75,000 was paid by the notes of the said Newton secured by shares of stock of the Archbald Consolidated Coal Company of the par value of $72,500. The authorized capital stock of the Archbald Consolidated Coal Company was $150,000. Forty thousand dollars was retained in the treasury of the company and there was issued only $110,000 of the stock. The notes of Newton, together with the transfer of

this stock of the Archbald Consolidated Coal Company, were the only securities that the plaintiff had for the $75,000 remaining unpaid on the purchase price of the plaintiff's lease. The plaintiff apparently gave up his vendor's lien and took no mortgage back upon the leasehold interest. The purpose of this was to enable the Archbald Consolidated Coal Company to float a bond issue, and bonds were issued by that corporation of the par value of $600,000. Those bonds were underwritten by the brokerage firm of Blodget & Co., and there was paid therefor, according to the allegations of the complaint, upwards of $355,000. It was from this $355,000 that the $25,000 was paid to the plaintiff for the lease. The balance of the said sum went into the development of the property and apparently a part thereof was wasted by Newton who was the president of the Archbald Consolidated Coal Company. When these notes for $75,000 given by Newton for the purchase price became due, they were extended until sometime in April, 1920. This stock of the Archbald Consolidated Coal Company was put into the hands of the Guaranty Trust Company to be held by them as security for these notes under some agreement by which the pledge was not to be foreclosed before the 1st day of May, 1920. Newton became embarrassed financially and was unable to pay his notes given for the purchase price of the plaintiff's leasehold interest, and the income from the operation of these mines was insufficient to pay the obligations of the Archbald Coal Company. The plaintiff, then, having an interest as the pledgee of $72,500 of the stock of the Consolidated Coal Company, and Blodget & Co., representing $600,000 of the bonds of the company, part of which the said firm had sold, had several conferences, by which it was sought to have some working agreement between the plaintiff and Blodget & Co., whereby each should contribute a part of the necessary expenses of the Archbald Company, until the production should be sufficient to take care of the expenses of the said company and the interest accruing upon the said bonds and the sinking fund provided for in the bonds and the mortgage which secured the same. Several propositions were made by Blodget & Co. to the plaintiff, none of which were accepted by him. He made no counter propositions, however, and no

definite arrangement was made.    Blodget & Co., representing this $600,000 of bonds, part of which they owned and part of which they had sold, were required to hold up the credit of the Archbald Consolidated Coal Company, both for their own reputation as the seller of these bonds and for their own interest as the holder of a part thereof.    This apparently was realized by the plaintiff, who refused to make any contribution to the expenses of the company, apparently expecting that if the notes were not paid upon May 1, 1920, to sell this stock upon the pledge, and thus to become the holder of the majority of the issued stock of the Archbald Consolidated Coal Company.    In order to protect their interest, however, Blodget & Co. formed a new corporation under the laws of the State of Delaware, which provided for an authorized issue of $200,000 of common stock and $200,000 of preferred stock.    This could only be done with the consent of Newton, which was obtained.    The rights to vote upon the stock remained with the pledgor.    The shares of common stock of the new company had a par value of $10, as did also the stock of the Archbald Consolidated Coal Company, and the shares of preferred stock had a par value of $1.    The preferred stock was given equal voting power with the common stock. It was provided that the common stock of the new corporation, the Archbald Coal Corporation, might be exchanged for the common stock of the Archbald Consolidated Coal Company, share for share, and that the owners of the shares of the Archbald Consolidated Coal Company should be entitled to subscribe for the preferred stock to the extent of one-twentieth in par value of the holding of the stock of the Archbald Consolidated Coal Company.    Inasmuch as 110,000 shares of the Archbald Consolidated Coal Company had been issued at $10 par value, this would give the holders of stock of that company the right to purchase 55,000 shares of the preferred stock of the new company, the Archbald Coal Corporation, and would entitle the plaintiff to subscribe for 36,300 shares of the preferred stock.    The time limit upon which this exchange could be made under the original proposition was June 20, 1920.    The plaintiff became the absolute owner of the pledged stock upon the books of the Archbald Consolidated Coal Company upon June thirteenth, so that he had seven days

upon which he might exercise his option to take his allotment of preferred shares of the new company apportionable to the common stock of the old company which he then owned. With the vote of Newton as record owner of the 72,500 shares pledged for the payment of these notes all the assets of the Consolidated Coal Company including the stock of the Archbald Coal Company were sold to the new company in consideration of stock of the new company as above stated. Upon these facts the plaintiff has brought this action to compel the Archbald Coal Corporation to reconvey to the Archbald Consolidated Coal Company all of the assets of said company including the stock of the Archbald Coal Company. This would leave the plaintiff in control of the corporation and the assets that are now held by the coal corporation through his ownership of the majority stock of the Consolidated Coal Company. It is true, as before stated, that the organization of this new corporation put it in the power of Blodget & Co. to control this corporation through the purchase of the remaining preferred stock which was left in the treasury of the corporation, and which was to be sold only as directed by the board of directors, who were controlled by Blodget & Co.

In *People* v. *Ballard* (134 N. Y. 269, 270) it is held that a business corporation cannot sell all of its property to a foreign corporation, organized through its procurement, with a majority of non-resident trustees, for the purpose of taking its place and its assets and carrying on its business; as this is a practical dissolution of the corporation. Such an act is neither within the express nor within the implied powers of the directors or officers of a corporation. In effect it works a dissolution of the corporation which is in derogation of the rights of the owners of the minority stock. If this power be given the corporation, however, by any statute, one becoming a holder of the stock even though he be in the minority, takes that stock subject to the power of the corporation and of its directors to exercise any rights given by the statute. So in New York State, by section 16 of the Stock Corporation Law (as amd. by Laws of 1920, chap. 396), a corporation, with the consent of two-thirds of its stock, may sell and convey its property,

rights, privileges and franchises to another domestic corporation organized under certain conditions. But the minority stockholder is under this statute protected if he does not consent to the sale, by section 17 of the Stock Corporation Law, wherein it is provided that a non-consenting stockholder may in such a case have the value of his stock appraised and he is entitled to the appraised value thereof, in which case the stockholder shall cease to be a stockholder and the stock becomes the stock of the corporation. Where such a provision exists for the payment of the non-consenting stockholder, it would seem to be immaterial whether the sale be for cash or whether the sale be upon the agreement that the stock of the old corporation is to be exchanged for stock of the new corporation, because the stockholder is left free to refuse his consent and demand the appraised value of his stock. In some of the other States it is provided that with the consent of a certain percentage of the stock the assets of a corporation and its franchises and good will may be sold to another corporation. Where, however, there is no protection to the non-consenting stockholder as there is in section 17 of our Stock Corporation Law, it would seem clear that that statute should not be interpreted so as to authorize the sale to another corporation in consideration of the exchange of stock in the new corporation for stock in the old corporation, where the rights of the stockholder in the new corporation differ from the rights of the stockholder in the old corporation in respect to his interest therein. So, in this case, this plaintiff, instead of becoming a majority stockholder in the old corporation, would become in fact a minority stockholder in the new corporation by reason of the right of the board of directors in the new corporation to sell this preferred stock at a par value of one dollar to any party to whom the directors may choose to sell it, while these directors are in a large part members of the firm of Blodget & Co., who have a conflicting interest with that of the plaintiff. It has been held, and rightly so, that in such cases where the rights of the non-consenting stockholders are not protected, the right of sale given upon the consent of a percentage of the owners of the stock, means the right of sale for cash and at a fair valuation, which would leave to the non-consenting stockholder who did

not care to join the new corporation the right to his *aliquot* part in the assets of the old corporation. (*Kremer* v. *Public Drug Co.*, 170 N. W. Rep. 571; *Koehler* v. *St. Mary's Brewing Co.*, 228 Penn. St. 648; *Matter of Timmis*, 200 N. Y. 177; *Lazenby* v. *International Cotton Mills Corp.*, 174 App. Div. 906.)

This sale of the stock of the Archbald Consolidated Coal Company to the Archbald Coal Corporation was not a sale for cash but was a sale which involved as a consideration the exchange of stock between the stockholders of the two companies, and as the plaintiff did not consent to the organization of the new corporation and to the exchange of this stock, the plaintiff is not bound thereby and the sale as to him was an illegal sale and he can ask the court to revoke the same and restore to the old company its assets, at least, unless the new company pays to him a fair value for his stock in the old corporation.

It is urged, however, that at the time of the organization of the new corporation and of the sale of the assets of the old corporation, the plaintiff was not the owner of this stock, that he was merely the pledgee thereof, and that Newton, as the owner of the stock, voted for the transfer. But the plaintiff is not the privy of Newton. He did not obtain his title to the stock from Newton by contract made after the act of Newton in consenting to this exchange. Having the title to the stock as the pledgee thereof, no act of Newton could divest him of his rights obtained thereby and with his rights therein as pledgee, he alone, could consent to the transfer of that stock for the stock of the new corporation. If we assume the rights of Newton to vote the stock and to vote for the transfer of the assets of the old corporation to the new corporation, we are still left with the plaintiff as a non-consenting stockholder, whose rights to the stock that was held and pledged with him cannot be impaired by Newton and with the full right, either as the owner of the stock when the pledge should be forfeited or to a fair compensation for its value which he has not been offered. Of his rights as pledgee Blodget & Co. at all times had full knowledge. The offers of the defendants to give to him certain control of the

First Department, April, 1921.                    [Vol. 196

corporation are not sufficient as a satisfaction of his rights which he has acquired as a purchaser of a majority of stock of the old corporation. The claim, therefore, that the defendant has in all matters acted according to the forms of law is not quite accurate, because without the right to turn in his stock in exchange for the stock of the new corporation, the right of Newton to vote that stock would seem to me to be a limited right, limited, at least, to the right to vote for the sale of the stock for cash at a fair valuation which is not the proposition for which the vote of Newton was obtained, and for which it was necessary for the purpose of transferring the assets from the old company to the new company.

The order appealed from was properly granted and should be affirmed, with ten dollars costs and disbursements.

DOWLING, LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.